UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW, S., | Case No. 23-11305 |
| Plaintiff, | Nancy G. Edmunds |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Matthew S. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15) and the administrative record (ECF No. 7).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's

motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

## I. DISCUSSION

### A. Background and Administrative History

Plaintiff alleges his disability began on August 6, 2018, at the age of 42. (ECF No. 7-1, PageID.33, 73). On October 25, 2018, Plaintiff applied for disability insurance benefits and supplemental security income. (*Id.* at PageID.71). In his disability report, he listed ailments which diminished his ability to work. The ailments included: panic disorder, post-traumatic stress disorder, anxiety, pancreatitis, low sodium, migraines, sleepiness, nausea, fear of leaving the house, depression, and high blood pressure. (*Id.* at PageID.97). His application was denied on February 26, 2019. (*Id.* at PageID.71).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On September 28, 2022, ALJ Brian Burgtorf held a hearing, at which Plaintiff and a vocational expert ("VE"), Adolph Cwik, testified. (*Id.* at PageID.53). On October 6, 2022, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.45). Plaintiff later submitted a request for review of the hearing decision. (*Id.* at PageID.17). On January 26, 2023, the Appeals Council denied

Plaintiff's request for review. (*Id.*). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 3, 2023. (*Id.* at PageID.10).

### B. Plaintiff's Medical History

The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this Report and Recommendation.

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2018, the alleged onset date. (*Id.* at PageID.73). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; conductive hearing loss; asthma; obstructive sleep apnea; cardiac arrhythmias; hypertension; hypothyroid; migraine; obesity; unspecified depressive disorder and major depressive disorder; generalized anxiety disorder; panic disorder; and post-traumatic stress disorder ("PTSD"). (*Id.*). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

3

capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> To perform light work . . . except: can occasionally climb ladders, ropes, and scaffolds; can frequently balance; can occasionally stoop, kneel crouch, crawl, and climb ramps and stairs; cannot work in extreme cold; can occasionally work around atmospheric conditions . . . cannot work around unprotected heights or around moving mechanical parts; can work in a moderate noise environment . . . can perform simple routine tasks as well as make simple work-related decisions; cannot work at a production rate pace, such as on an assembly line; and can occasionally interact with others.

(*Id.* at PageID.38). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.43). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as electrical accessories assembler, industrial bagger, and hammermill operator. (*Id.* at PageID.44). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since August 6, 2018, the alleged onset date. (*Id.* at PageID.81).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

E.  **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

5

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec'y*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec'y*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec'y*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.     Analysis**

Plaintiff argues that the ALJ's assessment of his social capabilities – including his ability to interact with supervisors and coworkers, maintain routines, respond to criticism, ask for help, and deal with the general public – was incorrect. He maintains the ALJ's decision is not supported by substantial evidence because he did not include the findings of two State Agency psychological consultants, Bruce Douglass, Ph.D., and Joseph DeLoach Ph.D., even though he found their statements persuasive. (ECF No. 12, PageID.2612-2613). DeLoach and Douglass' opinions were about Plaintiff's ability to interact with people at work. (*Id.*). Plaintiff also argues that the ALJ's RFC assessment conflicted with Kyle Wood, MS, LLP's assessment that Plaintiff had marked limitations in his ability to follow and carry out instructions, deal with the public, respond to criticism, ask for help, and handle changes in the work setting, among other social limitations. (*Id.* at

7

PageID.2613). Plaintiff claims the ALJ violated SSR 96-8p because he failed to explain rejecting parts of his opinion. (*Id.*). Finally, Plaintiff argues that the ALJ did not consider Plaintiff's ability to sustain work activities given symptoms related to Plaintiff's panic disorder and post-traumatic stress disorder, which prevented him from leaving his home and caused him to have panic attacks that occurred without warning. (*Id.*).

SSR 96-8p "state[s] the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity" in disability benefits claims. As Plaintiff says, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities observations)." SSR 96-8p. The ALJ must "provide an accurate and logical bridge between the evidence and the result" in order to be upheld. *Gross v. Comm'r of Soc. Sec'y*, 247 F. Supp. 3d 824, 839 (E.D. Mich. 2017). When a plaintiff reports symptoms, the RFC must include "a discussion of why symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. It must also consider medical source opinions and, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion

8

was not adopted." *Id.* The ALJ's decision here is supported by substantial evidence.

      a.      DeLoach and Douglass Opinions

Plaintiff questions the ALJ's decision to not include the limitations provided by Bruce Douglass and Joseph DeLoach in the RFC. Both DeLoach and Douglass submitted MRFC evaluations of Plaintiff's social abilities. (ECF No. 7-1, PageID.100, 115). They found that Plaintiff had a moderate limitation in his ability to interact with others, concentrate, persist or maintain pace, and adapt or manage himself. (*Id.*). They also found that Plaintiff was moderately limited in his ability to interact with the general public, accept instructions, respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. (*Id.* at PageID.105, 119). The ALJ found these opinions persuasive but he did not include all of the limitations in the RFC assessment. This was not in error.

First, an ALJ may exclude opinions that conflict with the objective medical data. *Smith v. Comm'r of Soc. Sec'y*, 2024 WL 416374, at *4 (E.D. Mich. Feb. 5, 2024) (internal citations omitted). The ALJ considered medical evidence of Plaintiff's social capabilities: he acknowledged Plaintiff's major depressive disorder, unspecified depressive disorder, generalized anxiety disorder, panic disorder, and PTSD. (*Id.*); (ECF No. 7-3, PageID.2395, 2420, 2533). He also

9

looked at records by Plaintiff's primary care physician, who noted that Plaintiff had no other mental status or neuropsychiatric abnormalities, and he considered Plaintiff's psychiatric medications. (ECF No. 7-1, PageID.41). The ALJ acknowledged Plaintiff's mental health therapy notes at North Country Community Mental Health and Harbor Hall. (*Id.*); (ECF No. 7-2, PageID.2033, 2045). These notes reflected Plaintiff's major depressive disorder, panic disorder, generalized anxiety disorder, and that Plaintiff has appropriate speech. (ECF No. 7-3, PageID.2535-36, 2541-57). Plaintiff's providers also noted that Plaintiff had "been doing a lot of AA meetings . . . which gets him out of the house." (ECF No. 7-2, PageID.2049). An emergency report on July 14, 2020, stated that Plaintiff "mostly stays at home, although he has been doing yard work outside." (ECF No. 7-3, PageID.2134). A later note from North Country Community Mental Health stated that Plaintiff "seemed more depressed" on some days, but that "his Celexa medication" may have reduced any "suicidal thoughts and depression in general." (ECF No. 7-2, PageID.2052). They also noted that Plaintiff was "alert and oriented" but "feels like a failure," "gained a lot of weight," has "difficulty accepting that he is good enough," and has "food card and cash assistance," and "had no money for food." (ECF No. 7-3, PageID.2546, 2548, 2552). Plaintiff's medical records stated that though he often had anxiety, Plaintiff cooperated with appropriate affect. (ECF No. 7-1, PageID.828, 841, 843, 1310).

10

There was no evidence suggesting difficulty socializing, either among peers or coworkers. Though Plaintiff struggled with income, self-worth, and PTSD, he was able to attend AA meetings, manage his medications, and he had appropriate affect in all health evaluations. (*Id.*); (ECF No. 7-3, PageID.2546, 2548, 2552). "[T]he ALJ – not the medical consultant – is 'responsible for assessing [a claimant's] residual functional capacity." *Smith*, 2024 WL 416374, at *4 (citing C.F.R. § 404.1546). Because the medical evidence did not indicate the suggested limitations, the ALJ did not need to include them.

These limitations were also stated in the decision checkblocks of the MRFC worksheet. Social Security Administration, *Programs Operations Manual System* ("SSA *POMS*") § DI 24510.060, https://secure.ssa.gov/poms.nsf/lnx/0424510060 (worksheet is constituted by decision checkblocks for four main categories: understanding and memory, sustained concentration and persistence, social interaction, and adaptation.). This section of the MRFC is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Id.* The ALJ included some limitations provided by the State Agency consultants in his RFC but he was not obligated to include any. The ALJ did not err.

      b.     Kyle Wood Opinion

Plaintiff disagrees with the ALJ's analysis of consultative examiner Kyle Wood, MS, LLP's opinion.  Wood found that Plaintiff had marked limitations in following complex instructions, carrying out detailed instructions, maintaining a routine, attendance, working a full day without rest periods, dealing with the general public, requesting assistance, responding to criticism, asking for help when needed, changes in the work setting, and traveling to unfamiliar places or using transportation.  (ECF No. 7-1, PageID.42).  The ALJ found the opinion unpersuasive, stating that it was

> vague, not stated in more specific functional terms, and did not express the most the claimant could do despite his impairments.  It is also inconsistent with the medical evidence of record, which reflects no psychiatric hospitalizations or mental health treatment that would suggest marked limitations.

(*Id.*).

Even so, the ALJ said "the opinion was supported by the examination, which noted diagnosis of major depressive disorder, recurrent episode, moderate, and panic disorder." (*Id.* at PageID.79).  And "the opinion was supported by clinical findings noting slow motor activity and labile affect." (*Id.* at PageID.79-80).  He found the opinion to be persuasive to the extent that it is "indicative of the claimant's ability to perform at least simple tasks." (*Id.*).

This, Plaintiff claims, is incorrect.  He argues that the record does not show that Plaintiff actually or actively engaged in golfing or boating regularly and by

12

citing to it, the ALJ considered "ambiguous" evidence to determine that Wood's opinion conflicted with the record. (ECF No. 12, PageID.2618). That said, this is not the case. First, Plaintiff mischaracterizes the ALJ's conclusion. The ALJ does not base his RFC on Plaintiff regularly engaging in the activities, but that "the treatment notes reflect that he has reported a variety of activities, including . . . walking daily, shopping at Wal-Mart, golfing, and boating." (ECF No. 7-1, PageID.41). Substantial evidence indicates that Plaintiff reported he was able to golf, boat, walk, and shop at Wal-Mart, and no evidence exists to show Plaintiff could not partake in these activities. Plaintiff lost 60 pounds from walking and changing his diet. (*Id.* at PageID.40-41). Clinical progress notes from Harbor Hall stated that Plaintiff "has been thinking that he would like to go golfing or boating, but doesn't think it would be . . . fun without alcohol." (ECF No. 7-3, PageID.2556). This was because "[h]e enjoys summer, but equates it with drinking," and that he "associates . . . most summer activities with drinking." (*Id.* at PageID.2560, 2564). Though Plaintiff noted that he "used to love to play golf . . . [but] ha[s]n't golfed in years," the evidence did not indicate that Plaintiff could not participate in the activities. (ECF No. 7-1, PageID.259). His team encouraged him "to golf or at least try out his swing at home." (ECF No. 7-3, PageID.2564). This is the basis for the ALJ's statement that Plaintiff "reported a variety of activities." (ECF No. 7-1, PageID.41).

13

The job of the court on appeal is to determine whether there is substantial evidence in the record and that the ALJ's decision is free from legal error. *Edwards v. Comm'r of Soc. Sec'y*, 2024 WL 2705000 (6th Cir. Feb. 12, 2024). It is not to reevaluate or reweigh the evidence. *Id.* Substantial evidence is not a high threshold: it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted)). "The standard 'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Id.* (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (citation omitted)). Under this narrow standard the Court "'must defer' to the Commissioner's decision when supported by substantial evidence, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (citing *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citation omitted)). To determine whether the evidence is ambiguous is an attempt to "resolve conflicts in evidence or decide questions of credibility," and is not the job of this court. *Id.* As a result, given that evidence exists supporting the ALJ's finding that Plaintiff engages in activities like golfing and boating contrary to Wood's assessment, the ALJ did not err.

Next, Plaintiff argues that the record does not suggest that he "had the resources . . . to engage in such activities." (ECF No. 12, PageID.2619). Plaintiff

14

points to how he had no money for food and was referred to the salvation army to prove that he could not engage in the activities. (*Id.*). Though these may be legitimate socioeconomic issues, Plaintiff has not shown that these challenges amount to a disability or severe restrictions in social interaction. In records from North Country Community Mental Health, Alan Scott LMSW noted Plaintiff's leisure/personal interests to be "[g]olf, sports fan, softball but body not up to par, beach, boating." (ECF No. 7-1, PageID.1209, 1257). Though Scott noted that Plaintiff's body was not up to par for playing softball, he did not indicate any difficulty golfing or boating. (*Id.*). A letter from Disability Consultants P.C. noted that Plaintiff "used to enjoy golfing." (ECF No. 7-3, PageID.2333). North Country Community Mental Health notes also stated that Plaintiff "is not interested in things he used to enjoy," because of "his depression and anxiety," not a physical or socioeconomic impairment. (ECF No. 7-2, PageID.1235). *See White v. Comm'r of Soc. Sec'y*, 2015 WL 13743552, at *9 (E.D. Mich. July 30, 2015) (though Plaintiff's "socioeconomic status and financial factors were a large cause of her symptoms because of her 'problems with job' and 'no $ coming in presently,'" the ALJ found "there [was] no evidence that the condition was disabling."). Plaintiff's own evaluation reflected that he did not "enjoy things as much as [he] used to," but not that there was any impediment engaging in the activities. (ECF No. 7-3, PageID.2537, 2596).

15

And Plaintiff objects to the ALJ's characterization of Wood's opinion because the ALJ relied on how the record had "no psychiatric hospitalizations or mental health treatment that would suggest marked limitations." (ECF No. 12, PageID.2619). He argues that "reliance on lack of psychiatric hospitalizations" is not based in law or regulation. (*Id.* at PageID.2620). This is not so. An ALJ may evaluate providers' opinions by seeking whether they are "inconsistent with the objective medical evidence, the lack of more aggressive medical treatment . . . and the claimant's ordinary activities." *Ealy v. Comm'r of Soc. Sec'y*, 172 F. App'x 88, 90 (6th Cir. 2006). Here, where the ALJ thoroughly discussed Plaintiff's psychiatric symptoms, noted the lack of aggressive treatment, and compared them to Plaintiff's ordinary activities, the ALJ did not err.

### c. Ability to Sustain Work Activities

Finally, Plaintiff argues that the ALJ did not evaluate his ability to perform sustained work activities considering his panic disorder, anxiety disorder, and PTSD, which were found to be severe impairments. (ECF No. 12, PageID.2621). He argues that the ALJ's decision "does not consider Plaintiff's ability to perform work on a sustained basis given his severe panic disorder[ ] [and] symptoms which occur without warning." (*Id.*). He argues that the state agency opinions suggested that Plaintiff would be moderately limited in the ability to complete a normal workday without interruptions from psychologically based symptoms.

16

But the ALJ considered Plaintiff's record. First, he considered Plaintiff's subjective symptoms and testimony. (ECF No. 7-1, PageID.39). He acknowledged that Plaintiff felt comfortable attending weekly therapy with Kim J. Lytle, and he considered Plaintiff's statements about his issues with alcohol, and that he used alcohol as a "coping mechanism that allowed [him] to continue to work." (*Id.* at PageID.39, 55-60); (ECF No. 7-2, PageID.1283-86, 2422, 2533-34, 2541-45). He also acknowledged that Plaintiff quit drinking on October 1, 2020, and "therapy and medications have been the substitute for the alcohol" because "they're[ ] like[ ] bandaids," and that his "doctor's trying to do the best to find the right medication." (ECF No. 7-1, PageID.39, 55-56).

The ALJ also considered how Plaintiff's medications have not helped alleviate his panic attacks entirely, though at times "he is able to take his medication in time and work his way through it, which happens 'if [he's] lucky about half the time.'" (*Id.* at PageID.39, 57-58). Plaintiff also stated that he can "try and get up for a little bit, get my medicine, take one of my pills" during a panic attack, and that he was able to attend his hearing even though he had a panic attack in the parking lot. (ECF No. 7-1, PageID.58). This was because he took his medication and was "trying to push through it a little bit." (*Id.*). He also evaluated Loretta Leja, MD's opinion, which stated that "the claimant is unable to sustain even sedentary work activity on a regular and continuing basis." (*Id.* at

17

PageID.42). He found this unpersuasive because "it [was] based solely on the claimant's subjective report rather than objective medical evidence." (*Id.*). He relied on the portion of Kyle Wood's opinion that stated "claimant had no limitations with respect to: remembering locations; following simple instructions; carrying out simple instructions; making simple work-related decisions; socially appropriate behavior; changes to the work setting; or setting realistic goals." (*Id.* at PageID.43).

The ALJ incorporated these statements and findings into the RFC and concluded that "the objective medical evidence is not consistent with disabling mental conditions or symptoms, and greater limits . . . are not supported." (*Id.* at PageID.41). In this way, he evaluated Plaintiff's ability to sustain work activities given his severe panic disorder, anxiety disorder, and PTSD, and his opinion was supported by substantial evidence.

### G. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has shown no legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## II.     PROCEDURE ON OBJECTIONS

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

19

No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: August 6, 2024                     s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on August 6, 2024.

                                         s/Sara Krause
                                         Case Manager